**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| PaxeraHealth Corp., | ) | |
| Plaintiff / Counter-Defendant, | ) | |
| v. | ) | Civil Action No. 26-11771-MJJ |
| Omar Mhanna and HealthTom LLC, | ) | |
| Defendants / Counter Plaintiff. | ) | |

**MEMORANDUM OF DECISION**

September 22, 2026

JOUN, D.J.

Plaintiff PaxeraHealth Corp. ("Plaintiff" or "PaxeraHealth") brings this action against Omar Mhanna, an ex-employee of PaxeraHealth, and Mr. Mhanna's company, HealthTom LLC ("HealthTom") (together with Mr. Mhanna, "Defendants"), arising from incidents that occurred following Mr. Mhanna's departure from PaxeraHealth. *See* [Doc. No. 1]. Plaintiff alleges that, after leaving PaxeraHealth in 2023, Mr. Mhanna stole PaxeraHealth's source code as well as other confidential business information, used that stolen intellectual property to start his competitor business, HealthTom, and tortiously interfered with PaxeraHealth's business by convincing PaxeraHealth's clients to stop using their services and instead use HealthTom's services. [Doc. No. 1 at 1]. Based on these actions, Plaintiff brings ten causes of action, including copyright infringement, misappropriation of trade secrets, and tortious interference with business relations. [*Id.* at ¶¶ 88–162].

Before me is Plaintiff's Motion for Preliminary Injunction. [Doc. No. 9]. Plaintiff requests that the court enjoin Defendants from (a) contacting or soliciting business from a current or former PaxeraHealth client or prospect as of May 8, 2023, (b) selling or offering software or software-as-a-service to the medical imaging sector, (c) selling or offering for sale software or software-as-a-service for use in producing AI algorithms, including, without limitation, HealthTom's infringing software, or (d) representing to any person that either Defendant has any rights to PaxeraHealth's software, source code, or HealthTom's infringing software built on PaxeraHealth's source code. [*Id.* at 17–18].

Because Plaintiff has failed to show a likelihood of success on the merits or irreparable harm, the Motion for Preliminary Injunction, [Doc. No. 9], is DENIED.

## I. BACKGROUND[1]

### A. PaxeraHealth and its Software

PaxeraHealth is a leading provider of software-based services to the medical imaging sector. [Doc. No. 1 at ¶ 9]. PaxeraHealth's software (the "Software") gathers and stores medical imaging studies, including CT, MRI, and Xray studies, and displays the results of these studies for use by medical professionals, including diagnostic uses by radiologists. [*Id.* at ¶ 10]. PaxeraHealth completed development of the Software in 2009, having invested more than four years and a million dollars into its development. [*Id.* at ¶¶ 11–12]. PaxeraHealth registered the copyright for the user interface and source code of the Software in Egypt as PAXERA RIS (Registration No. 00856) and PAXERA (Registration No. 00855). [*Id.* at ¶ 13].

[1] Plaintiff's Motion is limited to its copyright infringement, trade secrets, and tortious interference claims. As such, I will only summarize facts relevant to those claims. I do not include in this opinion allegations regarding Mhanna's abuse in the workplace or defamatory statements. *See* [Doc. No. 1 at ¶¶ 29–36, 47–60, and 85–87].

PaxeraHealth stores the source code for the Software (the "Source Code") and the company's other confidential business information, including marketing data and investor funding files (collectively, PaxeraHealth's "Confidential Business Information"), on its password protected, encrypted Google Workspace account. [*Id.* at ¶ 14]. PaxeraHealth takes strong measures to protect the security and secrecy of its Source Code and other Confidential Business Information, including by storing them on password-protected, encrypted cloud and local servers that require two-factor authentication to access. [*Id.* at ¶ 15]. Access to PaxeraHealth's Source Code is restricted to employees who need access to do their jobs. [*Id.* at ¶ 16].

**B. <u>Mhanna's Role at PaxeraHealth</u>**

On February 4, 2016, PaxeraHealth offered full-time employment to Mhanna as Vice President of Research and Development, which he accepted the same day. [*Id.* at ¶¶ 17, 19]. Mhanna's employment offer included a starting salary of $72,000. [*Id.* at ¶ 18]. Mhanna worked full time out of PaxeraHealth's Egypt office from his hiring in 2016 until he moved to PaxeraHealth's Massachusetts office in March of 2018. [*Id.* at ¶ 20]. Mhanna worked full time out of PaxeraHealth's Massachusetts office from March of 2018 until he left the company in March of 2023. [*Id.* at ¶ 21].

Throughout his time as a PaxeraHealth employee, Mhanna had access to PaxeraHealth's Source Code and other Confidential Business Information. [*Id.* at ¶ 22]. On or about November 11, 2022, Mahanna signed a Confidentiality / Non-Disclosure Agreement with PaxeraHealth (the "NDA"). [*Id.* at ¶ 23]. The NDA, among other things, prohibits Mhanna from using or disclosing PaxeraHealth's proprietary information other than as necessary for him to do his job, and includes a non-compete provision and a requirement that Mhanna return PaxeraHealth documents and other intellectual property at the conclusion of his employment. [*Id.* at ¶¶ 24–28].

### C. Mhanna's Departure from PaxeraHealth and Alleged Theft

On March 29, 2023, Dr. Shoura and Mike George, COO of PaxeraHealth, had a call with Mhanna to discuss software bugs and patient safety issues discovered in PaxeraHealth's system. [*Id.* at ¶ 37]. After the March 29, 2023 discussion, Mhanna allegedly refused to accept responsibility for his poor work quality. [*Id.* at ¶ 38]. On or about March 29, 2023, Mhanna submitted his resignation, claiming that he had received multiple employment offers from PaxeraHealth competitors. [*Id.* at ¶ 39]. Upon Mhanna's submission of his resignation, PaxeraHealth and Mhanna engaged in negotiations regarding giving Mhanna a severance package. [*Id.* at ¶ 40]. During Mhanna's severance package negotiations, Mhanna threatened that he would leave immediately and sell PaxeraHealth software for pennies on the dollar, if he did not receive twenty-six months of pay on a $220,000 annual salary basis. [*Id.* at ¶ 41].

While the Complaint alleges that PaxeraHealth accepted Mhanna's resignation on April 20, 2023, [*id.* at ¶ 42], Mhanna's affidavit states that his last day was not formally designated until May 22, 2023. [Doc. No. 14 at ¶ 21].[2] Following formal notification of the acceptance of Mhanna's resignation, PaxeraHealth disabled his corporate email and access privileges. [Doc. No. 1 at ¶ 43]. On May 7, 2023, PaxeraHealth terminated Mhanna's access to PaxeraHealth's servers and VPN. [*Id.* at ¶ 44]. On May 7 and 8 of 2023, after Mhanna's access to PaxeraHealth's VPN had been terminated but before the company was able to revoke his access to its Google Workspace account, Mhanna accessed PaxeraHealth's Google Workspace, and downloaded PaxeraHealth's Source Code and other Confidential Business Information. [*Id.* at ¶ 45]. Plaintiff alleges that Mhanna

---

[2] The Complaint also alleges that Mhanna "left the company in March of 2023." [Doc. No. 1 at ¶ 21]. I will accept as true the Complaint's allegation that Mhanna's resignation was not accepted until April 20, 2023. [*Id.* at ¶ 42].

attempted to cover up his access to PaxeraHealth's Google Workspace and downloads of PaxeraHealth's Source Code by deleting his download history. [*Id.* at ¶ 46].

### D. <u>Mhanna's Founding of HealthTom and Alleged Copyright Infringement</u>

Mhanna founded HealthTom in 2024, and HealthTom's incorporation paperwork was filed with Delaware on August 23, 2024. [*Id.* at ¶¶ 61–62]. Mhanna is an owner of HealthTom and its Chief Executive Officer. [*Id.* at ¶¶ 63–64]. On August 8, 2025, HealthTom registered a copyright in the United States (Reg. No. TX0009561153) for software that Plaintiff alleges is based on the stolen software from PaxeraHealth (the "Infringing Software"). [*Id.* at ¶ 65]. Plaintiff alleges that the Infringing Software is built on stolen PaxeraHealth Source Code with only minor cosmetic changes, and that HealthTom fraudulently registered the Infringing Software with the U.S. Copyright Office claiming to be its sole author, despite knowing that PaxeraHealth was the author of the underlying Source Code of the Infringing Software. [*Id.* at ¶¶ 66–67]. Plaintiff also alleges that Mhanna and HealthTom used, and continue to use, the Infringing Software to gather and store medical imaging studies and to display the results of these studies for use by medical professionals. [*Id.* at ¶ 68]. Plaintiff alleges, on information and belief, that Mhanna sold or licensed HealthTom's Infringing Software that was built using PaxeraHealth's Source Code to various hospitals and medical imaging companies, including Alfa Scan Radiology Center. [*Id.* at ¶ 69].

On June 1, 2023, PaxeraHealth became aware of Mhanna's actions and sent Mhanna a letter demanding that he cease his actions that were contradictory to the signed NDA and return the Source Code and any other documents pertaining to PaxeraHealth. [*Id.* at ¶ 70]. Within weeks of starting HealthTom, Mhanna began marketing HealthTom products including the Infringing Software, to PaxeraHealth's major clients in Egypt and the Middle East at low prices. [*Id.* at ¶ 71]. Mhanna was able to market HealthTom at extremely low prices compared to market rates because

he did not incur the cost of developing the Source Code. [*Id.* at ¶ 72]. Mhanna promoted HealthTom's Infringing Software inside and outside of Egypt to current and potential PaxeraHealth clients, including Saudi German Health, Misr Radiology Center, and Aswan Heart Center. [*Id.* at ¶ 73]. Defendants marketed their Infringing Software at U.S. trade shows where PaxeraHealth also marketed its services, including at conferences in 2024 and 2025. [*Id.* at ¶ 74].

On or around August of 2023, Mhanna posted images of the Infringing Software's user interface on the HealthTom website (the "Website Images"). [*Id.* at ¶ 75]. The Website Images reveal that the Infringing Software uses PaxeraHealth's Source Code because one of the Website Images shows a user-profile tag of Mariam Ashraf who was a PaxeraHealth employee when the Source Code was being updated, several years prior. [*Id.* at ¶¶ 76–77]. Plaintiff alleges that the Infringing Software could not have generated the Website Image containing Mariam Ashraf's user-profile tag if the Infringing Software had not been using PaxeraHealth's Source Code. [*Id.* at ¶ 78]. The Website Images were subsequently taken down by HealthTom. [*Id.* at ¶ 79].

### E. <u>Harm to PaxeraHealth</u>

PaxeraHealth had a contract to provide services to Aswan Heart Center for 15 years up until 2026, which Mhanna was aware of given that he provided support services to it in his role at PaxeraHealth. [*Id.* at ¶¶ 80–81]. Plaintiff alleges that Mhanna's marketing of the Infringing Software caused Aswan Heart Center to stop being a client of PaxeraHealth and start being a client of HealthTom, causing PaxeraHealth to lose revenue of more than $400,000. [*Id.* at ¶ 82]. Plaintiff further alleges that Mhanna's use of PaxeraHealth Confidential Business Information to steal PaxeraHealth clients cost PaxeraHealth millions of dollars in lost revenue. [*Id.* at ¶ 83]. The revenue lost by PaxeraHealth as a result of Mhanna's use of PaxeraHealth Confidential Business Information includes more than $2.5 million from one client alone. [*Id.* at ¶ 84].

## II. LEGAL STANDARD

Plaintiff seeks a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiff "bears the burden to show: (1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." *NuVasive, Inc. v. Day*, 954 F.3d 439, 443 (1st Cir. 2020) (citations omitted). The first two factors are the most important. *Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 85 (1st Cir. 2022). This Court accepts as true "all of the well-pleaded allegations [in Plaintiff's] complaint and uncontroverted affidavits filed in support of the motion for a preliminary injunction." *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976).

## III. ANALYSIS

### A. Likelihood of Success on the Merits

#### a. Copyright Infringement

To establish copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir. 1995), *aff'd*, 516 U.S. 233 (1996) (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

PaxeraHealth argues that it is likely to succeed on its copyright claim primarily because (1) it has a valid Copyright to its user interface and Source Code, registered in Egypt as PAXERA RIS (Registration No. 00856) and PAXERA (Registration No. 00855), (2) Mhanna accessed and downloaded the Source Code on May 7 and May 8, 2023, (3) Mhanna used the Source Code and made only minor cosmetic changes to the Infringing Software in order to launch HealthTom and

registered a copyright for the Infringing Software, which can be proven via the Website Images, and (4) the Source Code took PaxeraHealth four years to develop, but it only took Mhanna three months to develop the Infringing Software, which PaxeraHealth argues is not possible without having copied the original Source Code. [Doc. No. 9 at 8–10].

Defendants respond that, (1) Plaintiff has not produced the Egyptian registrations or identified what content is protectable, (2) Plaintiff has not provided evidence of copying because it has not offered an expert declaration, forensic comparison, source-code analysis, or any side-by-side identification of the copied original elements, (3) the Website Images are insufficient evidence of copying, and (4) Plaintiff's representation of the timing in which Defendants developed the Infringing Software is inaccurate. [Doc. No. 13 at 12–14].

To begin, Plaintiff has met the first prong of *Feist*. "To show ownership of a valid copyright and therefore satisfy *Feist*'s first prong, a plaintiff must prove that the work as a whole is original and that the plaintiff complied with applicable statutory formalities." *Lotus*, 49 F.3d at 813. "In judicial proceedings, a certificate of copyright registration constitutes *prima facie* evidence of copyrightability and shifts the burden to the defendant to demonstrate why the copyright is not valid." *Id.* (citation omitted). "Software, in general, is amenable to copyright protection." *ILOG, Inc. v. Bell Logic, LLC*, 181 F. Supp. 2d 3, 6 (D. Mass. 2002). Here, Plaintiff has alleged that it has a registered Copyright in Egypt. [Doc. No. 1 at ¶ 13]. Although Defendants argue that Plaintiff does not hold a U.S. copyright registration, they do not cite to any authority that would invalidate Plaintiff's Egyptian registration. *Golan v. Holder*, 565 U.S. 302, 333 (2012) (explaining that the Berne Convention, of which both the U.S. and Egypt are signatories, "ensured that most works, whether foreign or domestic, would be governed by the same legal regime"). Additionally, "Defendants have not cited any legal authority in support of its position that a copyright

infringement complaint must include evidence of the actual copyright registration certificate." *Garcia Ramirez v. Bonilla*, No. 23-cv-1412, 2024 WL 5429290, at *2 (D.P.R. July 31, 2024) (cleaned up) (holding that although Plaintiffs did not attach the certificate to the complaint, it was sufficient that their pleading alluded to the copyright registration by providing the copyright registration number); *see also Lyons v. Gillette*, 882 F. Supp. 2d 217, 230 (D. Mass. 2012) (lack of citation to the registration numbers did not warrant dismissal of the complaint). Because Defendants have offered no other evidence that the copyright registration is invalid, I find that Plaintiff has alleged "plausible facts demonstrating a valid copyright." *Id.*

However, Plaintiff has not met *Feist*'s second prong of actual copying. "To show actionable copying and therefore satisfy *Feist*'s second prong, a plaintiff must first prove that the alleged infringer copied plaintiff's copyrighted work as a factual matter." *Lotus*, 49 F.3d at 813. "[T]o do this, he or she may either present direct evidence of factual copying or, if that is unavailable, evidence that the alleged infringer had access to the copyrighted work and that the offending and copyrighted works are so similar that the court may infer that there was factual copying (i.e., probative similarity)." *Id.* "The plaintiff must then prove that the copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar." *Id.*

Substantial similarity between the copyrighted work and the allegedly infringing work "is assessed by comparing the protected elements of the plaintiff's work as a whole against the defendant's work." *Airframe Sys., Inc. v. L-3 Commc'ns Corp.*, 658 F.3d 100, 106 (1st Cir. 2011) (citation omitted). "The fact finder gauges this element by applying the 'ordinary observer' test, under which substantial similarity is found if a reasonable, ordinary observer, upon examination of the two works, would conclude that the defendant unlawfully appropriated the plaintiff's

protectable expression." *Id.* (citations omitted). "Where, as here, the copyrighted work involves specialized subject matter such as a computer program, some courts have held that the 'ordinary observer' is a member of the work's 'intended audience' who possesses 'specialized expertise.'" *Id.* at n.7 (citing *Dawson v. Hinshaw Music Inc.*, 905 F.2d 731, 735–36 (4th Cir. 1990)).

Here, Plaintiff's evidence in support of copying is speculative and conclusory at best. For instance, the Website Images showing a user-profile tag for a PaxeraHealth employee on the Infringing Software do not establish substantial similarity between the two works. There is no information indicating how the user-tag was generated, ruling out any other explanations for the presence of the user-tag, or any other information that would explain why the user-tag leads to the conclusion that the Source Code was copied. Additionally, Plaintiff's argument that the Infringing Software was developed in only three months because it was "registered only three months after Mhanna left PaxeraHealth," [Doc. No. 9 at 9], is contradicted by Plaintiff's own Complaint. The Complaint alleges that Mhanna's access to PaxeraHealth's servers were terminated by May 2023, [Doc. No. 1 at ¶ 45], but that HealthTom registered its copyright for the Infringing Software in August 8, 2025, [*id.* at ¶ 65], over two years after Mhanna left PaxeraHealth.

What remains are Plaintiff's conclusory arguments that because Mhanna accessed and downloaded the Source Code, he must have copied it such that the Infringing Software is substantially similar. *NuVasive, Inc. v. Day*, No. 19-cv-10800, 2019 WL 2287709, at *6 n.3 (D. Mass. May 29, 2019), *aff'd*, 954 F.3d 439 (1st Cir. 2020) ("Vague or conclusory allegations are insufficient to satisfy the plaintiff's burden on a motion for preliminary injunction") (citations omitted). This is insufficient. Since the record lacks information that I may use to utilize the

ordinary observer test, I find that Plaintiff is not likely to succeed on its copyright infringement claim.[3]

**b. Misappropriation of Trade Secrets**

To prevail on a claim for misappropriation of trade secrets, a plaintiff must establish: "1) the existence of a trade secret, 2) reasonable steps to preserve secrecy, and 3) use of improper means in breach of a confidential relationship to acquire the secret." *TouchPoint Sols., Inc. v. Eastman Kodak Co.*, 345 F. Supp. 2d 23, 27 (D. Mass. 2004) (citation omitted).

Defendants first contend that PaxeraHealth has failed to identify its alleged trade secrets with sufficient particularity. A trade secret may include "any formula, pattern, device or compilation of information which is used in one's business, and which [provides] an opportunity to obtain an advantage over competitors who do not know or use it." *Id.* (citing *Burten v. Milton Bradley Co.*, 763 F.2d 461, 463 (1st Cir. 1985)). Here, Plaintiff alleges that Mhanna downloaded PaxeraHealth's source code and other Confidential Business Information, including marketing data and investor funding files. [Doc. No. 1 at ¶¶ 14, 45]. These allegations sufficiently identify information capable of constituting trade secrets. In particular, PaxeraHealth's source code, marketing information, and investor information qualify as trade secrets. *See, e.g.*, *TouchPoint*, 345 F. Supp. 2d at 28 ("For software, trade secret protection is not limited to the source code.").

Defendants do not dispute the second element. As to the third element, whether Mhanna used improper means, Plaintiff's own allegations demonstrate that as of May 7 and May 8, 2023, PaxeraHealth had not revoked Mhanna's access to his Google Workspace account. [Doc. No. 1 at

[3] At the motion hearing, I offered the parties time to submit the Source Code and Infringing Software to an independent, neutral body to conduct a forensic examination to determine whether the Source Code was copied. [Doc. No. 25 at 22:15–23:1]. The parties could not reach an agreement on this. [Doc. Nos. 33 and 34]. Therefore, the only facts on the present record are insufficient to support a likelihood of success on the merits to the extent that Plaintiff's claims are premised on actual copying.

¶ 45]. Additionally, Mhanna's affidavit states that his last day was on May 22, 2023. [Doc. No. 14 at ¶ 14]. According to Mhanna, his job responsibilities required him to regularly access, download, and manage source-code backups through Google Workspace. [*Id.* at ¶ 22]. Dr. Shoura's affidavit disputes this, stating that Google Workplace was never the intended backup platform for source code, that downloading source code or confidential files was never authorized at PaxeraHealth, and that Mhanna was not authorized to download investor materials. [Doc. No. 17-1 at ¶¶ 4–6].

The Massachusetts Uniform Trade Secrets Act defines "improper means" broadly to encompass the use or disclosure of another's trade secret where the recipient knew or had reason to know that the information was obtained from or through a person who had a duty to limit its use, disclosure, or acquisition. *G&L Plumbing, Inc. v. Kibbe*, 699 F. Supp. 3d 96, 107 (D. Mass. 2023). There is at least a basis to conclude that Mhanna knew or should have known that his use of PaxeraHealth's Google Workspace was restricted. By that point, he had resigned, his access to PaxeraHealth's VPN and servers had been revoked, [Doc. No. 1 at ¶ 47], and he allegedly deleted his download history, [*id.*at ¶ 46]. Those circumstances could support an inference that he understood he had a duty to limit his access to and use of PaxeraHealth's confidential information.

Even assuming, however, that Mhanna's acquisition of the information was improper, the Complaint fails to allege non-speculative facts showing that he actually used the Confidential Business Information. The third element of a misappropriation claim "requires a showing that [the defendant] actually used the trade secret information." *EchoMail, Inc. v. Am. Exp. Co.*, 378 F. Supp. 2d 1, 3 (D. Mass. 2005); *Aggreko, LLC v. Koronis*, No. 13-cv-13034, 2013 WL 6835165, at *5 (D. Mass. Dec. 19, 2013) (finding that plaintiff was not likely to succeed on the merits of its trade secrets claim because it failed to show that defendant "actually used any of the information he took with him"). Here, Plaintiff's memorandum offers no argument or evidence demonstrating

actual use, and the Complaint's allegations concerning use are merely conclusory. Mere possession or acquisition, without non-speculative allegations of actual use, is insufficient.

Accordingly, Plaintiff has not demonstrated a likelihood of success on the merits of its trade-secret misappropriation claim.

**c. Tortious Interference with Business relations**

To establish a likelihood of success on a tortious interference claim, a plaintiff must establish that (1) it had an advantageous relationship with a third party; (2) defendant knowingly induced a breaking of the relationship; (3) defendant's interference with the relationship was intentional and improper in motive or means; and (4) plaintiff was harmed by defendant's actions. *Jakuttis v. Town of Dracut*, 95 F.4th 22, 36 (1st Cir. 2024) (cleaned up) (citation omitted).

PaxeraHealth argues that Mhanna tortiously interfered with their client, the Aswan Heart Center. Specifically, PaxeraHealth had a contract to provide services to Aswan Heart Center for 15 years; Mhanna was aware of PaxeraHealth's contract with Aswan Heart Center through providing support services to it, in his role with PaxeraHealth and by stealing PaxeraHealth's Confidential Business Information; Mhanna and HealthTom's marketing of the Infringing Software caused Aswan Heart Center to stop contracting with PaxeraHealth and start contracting with HealthTom; and the loss of Aswan Heart Center as a client harmed PaxeraHealth's revenue. [Doc. No. 9 at 12]; [Doc. No. 1 at ¶¶ 45, 80–81, 120]. PaxeraHealth also argues that Mhanna visited Aswan Heart Center, claiming that HealthTom was a new U.S. Delaware-based company that offered the same solutions as PaxeraHealth at lower prices, offering to sell them access to the Infringing Software. [Doc. No. 1 at ¶ 121].

PaxeraHealth is unlikely to succeed on this claim because it has not sufficiently alleged that Mhanna acted with the requisite improper motive or employed improper means. The improper

motive necessary to support a tortious interference claim requires "actual malice, a spiteful, malignant purpose, unrelated to the legitimate corporate interest." *Cashman Dredging & Marine Contracting Co., LLC v. Belesimo*, 759 F. Supp. 3d 120, 152 (D. Mass. 2024) (citation omitted). Improper means can include "violation of a statute or common-law precept, e.g., by means of threats, misrepresentation or defamation" including "misrepresentation of facts." *Corp. Techs., Inc. v. Harnett*, 943 F. Supp. 2d 233, 242 (D. Mass.), *aff'd*, 731 F.3d 6 (1st Cir. 2013) (citation omitted). Here, the allegations bearing on improper motive or means are insufficient. PaxeraHealth principally alleges that Mhanna knew Aswan Heart Center was a PaxeraHealth client and subsequently used the Infringing Software to solicit the Center on behalf of HealthTom. To the extent PaxeraHealth relies on Mhanna's alleged misuse of copyrighted or trade-secret information to establish improper means, however, that theory depends on the viability of its copyright and trade-secret claims. As explained above, PaxeraHealth has not demonstrated a likelihood of success on those claims.[4] *See Network Sys. Architects Corp. v. Dimitruk*, No. 06-cv-4717, 2007 WL 4442349, at *10 (Mass. Super. Dec. 6, 2007) (reasoning that if plaintiff cannot prove trade secret misappropriation, then the tortious interference claim also fails because "[o]rdinary competition, for personal financial gain, without misappropriation of trade secrets, is not improper").

Nor does PaxeraHealth allege other facts sufficient to establish an independently improper motive or means. Its allegations do not support an inference that Mhanna acted with actual malice or a spiteful or malignant purpose unrelated to a legitimate business interest. And apart from the

[4] PaxeraHealth also argues that Mhanna's solicitation of its clients constitutes a breach of his NDA's non-solicit provision. [Doc. No. 9 at 12, n.2; Doc. No. 1 at ¶ 27]. However, Mhanna's affidavit states that the non-solicitation clause expired one year after his employment ended on May 22, 2023, and HealthTom was not incorporated until August 23, 2024. [Doc. No. 14 at ¶ 14]. I agree with Defendants that the non-solicitation provision does not provide a sufficient basis for a finding of improper means to support the tortious interference claim.

alleged misuse of PaxeraHealth's intellectual property and confidential information, PaxeraHealth does not sufficiently allege that Mhanna employed independently wrongful means to obtain information about Aswan Heart Center or to solicit its business. Mhanna's knowledge that Aswan Heart Center was a PaxeraHealth client, standing alone, is insufficient to establish improper interference.

Accordingly, I find that Plaintiff is not likely to succeed on its tortious interference claim.

**B. <u>Irreparable Harm</u>**

Because I have found that Plaintiff has not satisfied the likelihood of success prong, which is the "main bearing wall" of a preliminary injunction analysis, Plaintiff's Motion may be denied on that basis alone. *Corp. Techs., Inc. v. Harnett*, 731 F.3d 6, 10 (1st Cir. 2013). However, I will explain why Plaintiff has not established irreparable harm either.

Plaintiff advances three theories of irreparable harm. First, it contends that Defendants' alleged theft of its intellectual property entitles it to a presumption of irreparable harm. Second, it argues that HealthTom's continued use of PaxeraHealth's copyrighted Source Code and trade secrets will enable HealthTom to continue taking PaxeraHealth's business, potentially forcing PaxeraHealth into bankruptcy before this litigation concludes. Third, Plaintiff asserts that, absent an injunction, it will suffer irreparable harm to its reputation. [Doc. No. 9 at 13].

None of these theories is sufficient. Plaintiff's first argument fails because, as discussed above, it has not demonstrated a likelihood of success on its copyright or trade-secret claims and therefore is not entitled to any presumption of irreparable harm. Its second argument fares no better. A showing of irreparable harm requires "an actual, viable, presently existing threat of serious harm that cannot adequately be remedied through money damages alone." *Harnett*, 943 F. Supp. 2d at 242 (citation omitted). Plaintiff's asserted loss of revenue is compensable through

monetary damages, and its assertion that continued losses may result in bankruptcy does not, on this record, establish a noncompensable injury. Plaintiff's third theory is similarly unsupported. Plaintiff identifies no specific facts demonstrating actual or imminent reputational injury, but instead relies on its broader, conclusory assertion that it cannot compete on price because Defendants allegedly copied its software. [Doc. No. 9 at 15].

Plaintiff's substantial delay in seeking preliminary relief provides an independent reason to reject its claim of irreparable harm. According to the Complaint, PaxeraHealth became aware of Mhanna's alleged conduct by June 1, 2023, when it sent him a letter demanding that he cease his actions. [Doc. No. 1 at ¶ 70]. Yet Plaintiff did not commence this action until April 16, 2026, [*id.*], and did not move for a preliminary injunction until May 15, 2026, [Doc. No. 9]. Such delay weighs against a finding that immediate injunctive relief is necessary. As the First Circuit has observed, "[t]he longer the delay, the more pervasive the doubt." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004) (affirming denial of preliminary injunctive relief where the plaintiff's "cries of urgency [were] sharply undercut by its own rather leisurely approach to the question of preliminary injunctive relief").

At the motion hearing, counsel for Plaintiff argued that PaxeraHealth did not become aware of the "specific solicitation" of their clients until just prior to filing the Complaint. [Doc. No. 25 at 4:4–16]. Counsel further represented that PaxeraHealth conducted a forensic examination that only recently revealed that its intellectual property, investor information, and other confidential information had been taken. [*Id.* at 4:17–5:5]. The record, however, undermines that explanation. Plaintiff acknowledges that: (1) by June 2023, it at least suspected that confidential information had been taken; (2) it thereafter took "numerous steps including hiring experts" to determine what had occurred; (3) by August 2023, HealthTom's website displayed the Website Images that

Plaintiff contends demonstrate copying of its source code; and (4) Defendants marketed the Infringing Software at trade shows in 2024 and 2025. [*Id.* at 6:17–8:3; Doc. No. 1 at ¶¶ 74–75]. Thus, well before filing this action, Plaintiff possessed information that, by its own account, supported its allegations of copying and competitive harm.

Plaintiff's explanation for waiting until 2026 is also difficult to reconcile with the position it has taken in support of its preliminary injunction motion. At the hearing, Plaintiff argued that it was "hard to allege the harm elements of these claims until [it] fully understood what was happening." [Doc. No. 25 at 6:6–11]. At the same time, Plaintiff maintains that it did not "need to provide" a technical analysis at the preliminary injunction stage, [id. at 5:6–11], that "no such technical analysis is required at the preliminary injunction stage," [Doc. No. 17 at 3], that its "sworn statement that it exists should be sufficient," [Doc. No. 25 at 5:6–11], and that the "Website Image is more than adequate evidence at the preliminary injunction stage," [Doc. No. 17 at 4]. Those positions are difficult to reconcile. If, as Plaintiff contends, the Website Images and its sworn representations are sufficient to support preliminary injunctive relief without a technical analysis, then the forensic examination does not explain why Plaintiff waited to seek that relief. Indeed, Plaintiff does not rely on the results of that forensic examination to establish in its preliminary injunction motion that Defendants copied its source code. Instead, the factual basis offered for that allegation consists of the Website Images—the same images Plaintiff discovered in August 2023. [Doc. No. 1 at ¶ 75].

Accordingly, under Plaintiff's own theory of what is sufficient to obtain preliminary relief, it possessed the necessary factual basis to seek such relief as early as August 2023. I therefore am not persuaded that Plaintiff only recently discovered the need for an injunction. The lengthy period between Plaintiff's discovery of Mhanna's alleged conduct and its request for preliminary relief

substantially undermines its assertion of urgency and irreparable harm. *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 35 (1st Cir. 2011) ("[T]he failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury") (citation omitted).[5]

Accordingly, Plaintiff has failed to establish irreparable harm.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction, [Doc. No. 9], is DENIED.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge

[5] Because I find that Plaintiff has failed to meet the two most important factors required for a preliminary injunction, I need not address the remaining prongs of the traditional four-part test. *See Charlesbank*, 370 F.3d at 163 n.6.